UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

JOHN ALLAN SMITH,

    Defendant.

Case No. 3:23-cr-26

District Judge Michael J. Newman

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO SUPPRESS (Doc. No. 19)**

Now before the Court is Defendant John Allan Smith's motion to suppress evidence (Doc. No. 19), filed through counsel. On August 14, 2024, the Court held an evidentiary hearing on Defendant's motion, attended by counsel for both sides, and heard testimony from Montgomery County Sheriff's Deputy Javan Richardson, Jr. ("Richardson"). Doc. No. 40. Following the hearing, Defendant filed a supplemental brief (Doc. No. 45), and the Government filed a memorandum in opposition (Doc. No. 46). Defendant submitted a reply (Doc. No. 47), and the Court ordered the Government to file a response, which it has. (Doc. No. 50). The Court has carefully reviewed and considered each document. Accordingly, the motion is ripe for review.

**I.**

On March 10, 2023, Richardson pulled over the vehicle Defendant was driving. Doc. No. 40 at PageID 146-47. During the evidentiary hearing, Richardson testified that he initiated the

stop after he observed that Defendant's vehicle allegedly did not have a "rear registration light" in violation of O.R.C. 4513.05.[1] *Id.* at PageID 147.

During the traffic stop, Richardson asked Defendant how he was doing and explained the purpose of the traffic stop. Doc. No. 40 PageID 179-80. Defendant indicated he did not have his driver's license on him, but he verbally provided Richardson his Social Security number. *Id.* at PageID 149. Additionally, Richardson testified that Defendant explained he was driving his girlfriend's car and was coming from a security job. *Id.* at PageID 180. Richardson then asked Defendant where he worked, where his girlfriend was from, how long they had been together, how long they had known each other, and whether they were from different states. *Id.* at PageID 180-81. Defendant answered each question. *Id.*

After this conversation, Defendant voluntarily stated that he was in possession of a firearm. *Id.* at PageID 149-50, 179, 181. At that point, Richardson advised Defendant to keep his hands visible while he returned to his police cruiser to run a Law Enforcement Automated Data System (LEADS) computer inquiry on Defendant. *Id.* at PageID 150-51. Based on this inquiry, Richardson learned that Defendant's driver's license was suspended based on non-compliance with a child support order, and he also was the subject of a court protection order. *Id.* at PageID 151.

Richardson and a backup officer returned to the subject vehicle, removed Defendant from his car, and advised him he was being detained. *Id.* Defendant was then patted down and placed in the back seat of Richardson's police cruiser. *Id.* at PageID 152. During the pat down process,

---

[1] Ohio law requires "[e]ither a tail light or a separate light shall be so constructed and placed as to illuminate with a white light the rear registration plate, when such registration plate is required, and render it legible from a distance of fifty feet to the rear." *See* O.R.C. 4513.05(A).

Richardson removed a handgun from Defendant's person and Defendant voluntarily stated he had another firearm and rifle in his backseat. *Id.* at PageID 182.

After securing Defendant in the back seat of his cruiser, Richardson searched the Downtown Records Section Database wherein he learned Defendant's protection order restricted him from possessing firearms. *Id.* at PageID 152. Richardson then asked Defendant a question about the protection order. *Id.* at PageID 182-83. Richardson had not read Defendant his *Miranda*[2] warnings at that point. *Id.* at PageID 182.

Ultimately, Richardson cited Defendant for his alleged unilluminated rear registration place in violation of O.R.C. 4513.05 and for driving with a suspended license in violation of O.R.C. 4510.16A. *Id.* at PageID 154-55.

## II.

Defendant contends as follows: First, he argues that Richardson lacked reasonable suspicion of criminal activity to stop his car and seize him, so the gun seizure violates the Fourth Amendment. Doc. No. 45 at PageID 203-06. Second, Defendant contends that Richardson exceeded the scope of the traffic stop when he (1) did not investigate the rear license plate during the stop (Doc. No. 47 at PageID 224) and (2) began searching for disabilities (Doc. No. 45 at PageID 209). Last, Defendant contends that, once he was in the back of the police car, Richardson failed to first give him a *Miranda* warning. *See Miranda v. Arizona,* 384 U.S. 436 (1966).

The Court disagrees with the first two arguments, given that Richardson had reasonable suspicion for the stop, asked only introductory questions of Defendant, developed independent reasonable suspicion of criminal activity during the stop, and acted reasonably–and pursuant to standard police protocol–by placing him in the back of the police cruiser while he promptly

---

[2] *Miranda v. Arizona*, 384 U.S. 436 (1966).

3

conducted his investigation. The Court agrees with Defendant that, once he was in the back of the cruiser and seized for purposes of the Fourth Amendment, Richardson should have *Mirandized* him before asking him questions.

### III.

This Court has previously set forth the legal standards for resolving a motion to suppress and incorporates those standards herein. *See United States v. Curry*, No. 3:20-CR-65, 2021 WL 2936024, at *3–4 (S.D. Ohio July 13, 2021). It suffices to briefly note the Fourth Amendment forbids "unreasonable searches and seizures" and provides, "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. CONST. art. IV. "It is well settled under the Fourth Amendment that a warrantless search is *per se* unreasonable subject only to a few specifically established and well-delineated exceptions." *United States v. Trice*, 966 F.3d 506, 512 (6th Cir. 2020).

A traffic stop must be: (1) "justified at its inception"; and (2) "reasonably related in scope to the circumstances which justified the interference in the first place." *Terry v. Ohio*, 392 U.S. 1, 19-20 (1968). A police officer may stop the driver of a vehicle without running afoul of the Fourth Amendment when the officer has "probable cause" to believe that a driver has violated a traffic law. *Whren v. United States*, 517 U.S. 806, 810-12 (1996). "[T]his is true even if the officer is actually motivated by some other purpose, such as investigating an unrelated crime." *United States v. Shelton*, 817 F. App'x 217, 219 (6th Cir. 2020). In the context of "ongoing" traffic violations, such as "a blocked license plate or … an overly tinted window," courts apply the less stringent "reasonable suspicion" standard. *Id.*; *see also United States v. Simpson*, 520 F.3d 531, 541 (6th Cir. 2008) ("[R]easonable suspicion of an ongoing misdemeanor is adequate justification"); *see*

4

*also United States v. Shank*, 543 F.3d 309, 313 (6th Cir. 2008) (holding an officer reasonably suspects a window tint violation if the officer is familiar with their state's window tint law and estimates that the vehicle is substantially darker than permitted by law). "If an officer develops reasonable and articulable suspicion of criminal activity during a stop, he may extend the traffic stop long enough to confirm or dispel his suspicions. Any such extension, though, must be limited in scope and duration." *United States v. Winters*, 782 F.3d 289, 296 (6th Cir. 2015) (internal quotations omitted).

Having carefully and thoroughly reviewed the motion papers and the parties' arguments, and assuming, *arguendo*, that Defendant has standing to raise the Fourth Amendment concerns here at issue, the Court finds Defendant's Fourth Amendment arguments lack merit. Richardson testified that, "I got behind the vehicle. I turned my headlights off, because we have LEDs … and I can see that there's no light. I turned them back on. And then I initiated a traffic stop for the violation." Doc. No. 40 at PageID 148. Richardson additionally testified, "I did double-check before I stopped him" and there was no question in his mind that the subject vehicle did not have a properly illuminated rear registration plate. *Id.* at PageID 168; 187.

The Court finds Richardson's testimony credible as to his procedure before he initiated the stop and his observation of Defendant's unilluminated rear registration plate. *See United States v. Bonilla,* 357 F. App'x. 693, 695 (6th Cir. 2009). Richardson, thus, possessed "reasonable suspicion" of an ongoing traffic violation at the time the stop was initiated, and the stop itself– short in duration–was not violative of the Fourth Amendment. S*ee Shelton*, 817 F. App'x at 219. Additionally, Richardson developed separate reasonable suspicion of criminal activity to exceed the scope of the stop to verify or dispel his suspicion based on Defendant's voluntary statements about his gun possession, Richardson's knowledge of Defendant's protection order, and

5

Richardson's discovery of Defendant's guns. *See United States v. Hicks*, 190 F. Supp. 3d 733, 743 (S.D. Ohio 2016). The Court finds there were sufficient historical facts and events for an objective reasonable officer to detain and subsequently arrest Defendant. *See Curry*, 2021 WL 2936024, at *5. Accordingly, the fruit of the poisonous tree doctrine does not apply to exclude any of the evidence obtained as a result of the stop.

**IV.**

Turning to Defendant's *Miranda* contentions, the Fifth Amendment provides "No person ... shall be compelled in any criminal case to be a witness against himself[.]" U.S. Const. amend. V. *Miranda* warnings are required when a suspect has "been taken into custody or otherwise deprived of his freedom of action in any significant way." *Miranda*, 384 U.S. at 444. "[P]ersons temporarily detained pursuant to such stops are not 'in custody' for the purposes of *Miranda*." *United States v. Dunn*, No. 23-5058, 2023 WL 8114366, at *6 (6th Cir. Nov. 22, 2023) (citing *Berkemer v. McCarty*, 468 U.S. 420, 440 (1984)); *see also Hoffner v. Bradshaw*, 622 F.3d 487, 512 (6th Cir. 2010) ("general on-the-scene questioning as to facts surrounding a crime or other general questioning of citizens in the fact-finding process is not affected by the holding in *Miranda*") (internal quotations omitted)). "However, if a motorist who has been detained pursuant to a traffic stop thereafter is subjected to treatment that renders him 'in custody' for practical purposes, he will be entitled to the full panoply of protections prescribed by *Miranda*." *Dunn*, 2023 WL 8114366, at *6 (internal quotations omitted).

Richardson did not transform the stop into a custodial detention by simply asking a few introductory questions regarding Defendant's identity and his relationship to the owner of the subject vehicle. The six questions[3] posed to Defendant prior to his removal from the vehicle were

---

[3] Defendant states that Richardson asked him twelve questions but does not point to evidence that supports that conclusion. *See* Doc. No. 45 at PageID 207-08.

6

general on-the-scene questions. *See Berkemer*, 468 U.S. at 439 (analogizing traffic stops to *Terry* stops, in which "the officer may ask the detainee a moderate number of questions to determine his identity and to try to obtain information confirming or dispelling the officer's suspicions"). Therefore, Defendant was not in custody and not subject to *Miranda* warnings before he was removed from the vehicle and his statements are not subject to suppression.

However, Richardson transformed the stop into a custodial detention once he physically removed Defendant from the subject vehicle, patted him down, and placed him in the back seat of the police cruiser. *See United States v. Blum*, 614 F.2d 537, 540 (6th Cir. 1980). At this point in time, as the Government concedes (Doc. No. 50 at PageID 234), Defendant was in police custody and subject to *Miranda* warnings. *See United States v. Sangineto-Miranda*, 859 F.2d 1501, 1515-16 (6th Cir. 1988). Once he was placed in the back of the police cruiser, Richardson asked, "Hey, buddy, do you know that you have a protection order against you?", to which Defendant replied, "Yes." Doc. No. 40 at PageID 182-83. Richardson did not give Defendant his *Miranda* warnings prior to that limited question-and-answer colloquy. His response, and any further response he gave, merit suppression under *Miranda*.

## V.

Defendant's motion, therefore, is **GRANTED IN PART AND DENIED IN PART.** Accordingly, the seizure of Defendant's guns is permissible, but Defendant's statements in the police cruiser are suppressed.

**IT IS SO ORDERED.**

<u>January 17, 2025</u>                      s/*Michael J. Newman*
                                                       Hon. Michael J. Newman
                                                       United States District Judge